Dickman, J.
Prior to the year 1848, L. B. Lewis and William Eichelberger, under the firm name of Lewis & Eichelberger, had been partners in the flouring mill business in the town of Lawrenceburgh, Indiana, and in July of that year, Samuel • Fosdick, the plaintiff in error, came into the firm as a dormant partner. He continued his relations with the firm, as dormant partner, having a one third interest in the concern, until September 17th, 1868, when his connection with the firm was dissolved, and notice of the dissolution was published in a Lawrenceburgh newspaper. Fosdick resided in Cincinnati, and there managed the financial affairs of the firm, and by accepting its drafts, making sales of flour, and raising the requisite funds for carrying on the business, rendered unnecessary the borrowing of money in Lawrenceburgh. With the exception of a few bank officers and directors in that town, very few if any of the residents appear to have known that he had any interest in the firm of Lewis & Eichelberger. In addition to the business of manufacturing flour, L. B. Lewis and William Eichelberger, under the same firm name of Lewis & Eichelberger, were engaged in Lawrenceburgh in other branches of business— in prosecuting other enterprises — in which Fosdick was in no manner interested. As a firm engaged in other than the flouring mill business, they were paying out on an average *463 about one thousand dollars daily; and relying upon their reputation for solvency, people were in the' habit of depositing money with them on interest, without reference to the use to which it was to be applied, and for which they were, aecustoméd to give their notes signed in the firm name of Lewis & Eichelberger. Among those who had loaned the firm money was the defendant in error, Cornelius Van Horn. It is not manifest, that he had any knowledge of Fosdick’s interest in the co-partnership of Lewis & Eichelberger, when, on the 21st of March, 1868, he made the loan and took from Lewis the note executed in the name of that firm. But we are satisfied from the testimony, that the money loaned by him was never used in the flouring mill business of Lewis & Eichelberger, and that Fosdick never derived any benefit from it whatever.
The material question however arises, did Lewis & Eichelberger borrow the money from Van Horn upon the credit of the firm in which Fosdick was a dormant partner ? At the time of the loan, Van Horn, in common with those who had monetary dealings with Lewis & Eichelberger not connected with their flouring mill business, might be presumed to know that they could not carry on their milling business without a supply of wheat. But, at the time of the transaction, when the money passed and the note was made, Lewis said nothing as to the use or purpose for which he wanted the money. He did not then represent to Van Horn or any one else that he was borrowing the money on the credit of Lewis & Eichelberger, as co-partners in the Homing mill business; nor does it appear that he represented Fosdick to be a member of the firm. The only conversation on the occasion seems to have been in regard to the time the paper should run, and the rate of interest to be paid. The testimony as to an alleged statement of Lewis, on the day of the transaction or the day before, that’ he wanted the money borrowed from Van Horn for the purpose of buying wheat, is too contradictory to sustain a reliable opinion. The fact that Van Horn loaned the money in the office at the mill, cannot place him upon a footing *464 •different from that of others, who with full knowledge of the milling business carried on by the firm, loaned their money to Lewis & Eichelberger to be-used in enterprises outside the flouring mill business. We need not inquire what firm of -Lewis & Eichelberger it was to which Yan Horn supposed he was making the loan, except so far as we have evidence of his acts and declarations. But certain it is, that while notice of the dissolution of the firm in which .Fosdick had been a dormant partner and of the fact of his interest in the milling business, was published in a -newspaper in Lawrenceburgh — the residence of Van Horn — as. far back as September, 1868, he did not see fit to assert his •claim against Fosdick until the y-ear 1875. Until Yan Horn called upon him shortly before the commencement of this suit, Fosdick had never heard of the loan in question. At the time of the transaction, Lewis did nothing and said nothing from' which could be inferred an intention to borrow the money on the credit of Lewis, Eichelberger and Fosdick. Van Horn’s previous dealings furnish no satisfactory proof of such intention. He may have previously lent money to the firm, but there is a failure of proof that it was loaned, for the purchase of wheat, especially in view of the fact, that the funds for buying wheat and running the mill were raised by Fosdick as the financier of the concern.
The liability of dormant partners to the creditors of the firm, is determinable by well settled legal principles. Those who jointly participate in the profits of business ostensibly carried on by another for his sole use and benefit, are equally liable when discovered, with the ostensible owner, to all creditors of the concern whose debts were contracted during the term of such participation. Bigelow et al. v. Elliot, 1 Clifford C. C., 28. According to the weight of judicial authority, where a partnership of two persons is carried on in the name of one partner only, and he gives & note for borrowed money.in his individual name, the firm is not bound thereby, unless it is proved that the money for which the note was given was borrowed on the credit of the *465 partnership, or was used in the business or for the benefit of the partnership. The -presumption is that the debt is the debt of the individual in whose name the obligation is made, if at the time, he is carrying on business separate from the business of the firm of which he is a member. If therefore the holder of the note would bind the dormant partner, he must prove something more than that he was a partner in business with the maker of the note. He must prove that the money was borrowed on the credit of the firm, or that it went to the benefit of the firm; but, the fact that it was borrowed on the credit of the firm, may be proved by the representations of the maker of the note at the time of the transaction, or by circumstances. U. S. Bank v. Binney et al., 5 Mason, 176; Manufacturers' and Mechanics' Bank v. Winship, 5 Pick., 11; Oliphant v. Mathews, 16 Barb., 608; National Bank of Chemung v. Ingraham, 58 Id., 290; Etheridge v. Binney, 9 Pick., 272; Yorkshire Banking Co. v. Beatson, Brit. L. R., 5 C. P. Div., 109.
These principles find an analogous application, where, in the same community, there are two firms of the same name, each consisting of the same persons, but each engaged in different kinds of business, one of which contains a dormant partner and the other does not. If suit is brought on a promissory note for borrowed money bearing the signature of the common firm name, the presumption is that it is the note of the firm not containing the dormant partner. The plaintiff, to recover against the dormant partner, must prove either that the consideration of the note was obtained on the credit of the firm in which the dormant partner was interested, or that it inured to the benefit of that firm. That it was upon the credit of that firm that the money was borrowed, may be proved by the declarations to that effect of the ostensible partners at the time of the loan, or it may be. proved by circumstances. As said by Thesiger, L. J., in Yorkshire Banking Co. v. Beatson, supra, “When once it is established that a name common to a firm and an individual member of it has been put to a *466 bill as the name of a firm, there is no difference between the liability of partners carrying on business in such a name and the liability of partners carrying' on business in a name which bears in itself the stamp and evidence of a partnership.” If one holds an obligation that bears the signature of a firm purporting to embrace the names of all its members, it may reasonably be presumed, from the face of the instrument itself, that he is dealing with the persons whose names appear thereon, and not with another firm of the same name in which a dormant partner is interested. If there is such another firm, it is open to the holder of the instrument upon discovering the dormant partner, to show by the circumstances of the case as well as by the declarations of the other parties, that the transaction rested upon the credit of that firm, or that such firm received the benefit of the transaction.
The liability of a dormant partner grows out of the principle, that by taking a part of the profits, he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts. Waugh v. Carver, 2 H. Black, 247. But this principle can have no force where it is shown that one claiming to be a creditor has not contracted upon the credit of the firm having the dormant partner, and the property or money advanced by such alleged creditor has not gone into the business'of the firm, or inured to the benefit of the dormant partner. As to putting property into the concern, and thereby inducing others to contract with his copartners upon the faith that they are the sole owners of the property, the dormant partner is to be regarded as doing no more than a creditor who lends his money or sells his goods to the firm. There is great force in the language of the court in Banking Co. v. Beatson, supra. “ In actions founded upon purely personal contracts, the law does not recognize the mere moral right which a creditor may attempt to assert against one person in consequence of his having intrusted to another property, in the belief of his ownership of which, the creditor may have contracted with him; in other words, in a ease like *467 the present, there is no conduct on the part of the dormant partner which makes it inequitable on his part to deny or estops him from denying his liability upon a contract to which he was in fact no party, from which he has derived no benefit, and in respect of which he was not held out to the person suing him as liable.”
From an application of the foregoing legal principles to the facts in this case, we are led to the conclusion, that the plaintiff below should not have had judgment upon the issues joined. But the plaintiff in error — Fosdick—alleges as a ground of error, that the court of common pleas erred, in excluding evidence offered by himself when defendant below. At the time of the trial, the “ mill books ” of Lewis & Eiehelberger were in Lawrenceburgh, Indiana, in the hands of their assignee in bankruptcy — the person then entitled to the possession of the same, and who was beyond the jurisdiction of the court. It was material to the defence to establish, that the money borrowed of the plaintiff never went into the milling business of Lewis & Eiehelberger. For that purpose, the defendant offered in evidence certain interrogatories propounded to Lewis himself in reference to the books of that firm, and the answers thereto, contained in his deposition, which, upon objection by the plaintiff, were excluded as irrelevant and incompetent. The answers set forth, that the mill ledger contained the entire business of the mill; and that the note to Van Horn, the plaintiff, was never entered in that book, because it did not belong to the milling business or account. The answers contained relevant and under the circumstances competent testimony, the case being, as we think, a proper one for the admission of secondary evidence. In excluding the testimony, we are of opinion, the court erred. In Burton v. Driggs, 20 Wallace, 125, it was held, that when it is necessary to prove the results of-an examination of many books of a bank to show a particular fact as ex. gr. that A. B. never at any time lent' money to a bank, and the examination cannot be conveniently made in court, the results may be proved by persons who made the examination — the books being out of *468 the state and beyond the jurisdiction of the court. Swayne, J., in delivering the opinion of the court, says, “ Here the object was to prove not that the books did, but that they did not show certain thihgs. The results sought to be established were not affirmative but negative. If such testimony be competent as to the former, a fortiori, must it be so to prove the latter.”
The judgments of the district and common pleas courts will be reversed, and the canse remanded to the court of common pleas.
Judgement accordingly.